PAUL DARR ET AL., APPELLEES, V.
C. CAROLL LONG, APPELLEE,
AETNA CASUALTY AND SURETY COMPANY,
GARNISHEE-APPELLANT.

313 N.W.2d 215

Filed December 4, 1981.   No. 43524.

John R. Douglas and Patrick B. Donahue of Cassem, Tierney, Adams, Gotch & Douglas for appellant.

Robert L. Freeman of White, Lipp, Simon & Powers for appellees Darr.

No appearance for appellee Long.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

This is an appeal from the entry of a decree in garnishment by the District Court for Douglas County in favor of the plaintiffs and against the Aetna Casualty and Surety Company in the amount of $40,000. This decree was based upon a judgment obtained by the plaintiffs in an action against C. Caroll Long, doing business as Caroll Long Auto Sales. The "funds" garnished were the face value of two $20,000 motor vehicle dealer's bonds issued by Aetna to C. Caroll Long in accordance with the statutory requirement that all applicants for motor vehicle dealer licenses furnish a surety bond to insure that the "applicant will faithfully perform all the terms . . . of said license, . . . that the licensed dealer will fully indemnify any person . . . by reason of any loss suffered because of . . . false and fraudulent representations or deceitful practices . . .

and . . . that the . . . dealer shall well, truly, and faithfully comply with all the provisions of his license and the acts of the Legislature . . . ." Neb. Rev. Stat. § 60-1419 (Reissue 1978). Aetna has assigned numerous errors on appeal, the two principal assignments being that the court erred in determining that garnishment was the proper remedy and that the bonds were available to pay statutory penal damages. We reverse and remand for the reasons set forth below.

This entire matter originated as a class action filed by plaintiffs against Long, alleging that plaintiffs and some 40 other citizens of Nebraska had purchased used automobiles from persons who had obtained them from Caroll Long Auto Sales on which the odometers had been turned back and the mileage certificates falsified. Such activities were alleged to be violations of 15 U.S.C. § 1984 (1976) and Neb. Rev. Stat. § 60-2303 (Reissue 1978). Section 1984 prohibits the alteration of the "odometer of any motor vehicle with intent to change the number of miles indicated thereon." Section 60-2303 requires any person transferring title to a motor vehicle in Nebraska to provide the buyer with a statement which in effect certifies that the mileage on the odometer is correct. A violator of the federal statute "shall be liable in an amount equal to the sum of (1) three times the amount of actual damages sustained or $1,500, whichever is the greater . . . ." 15 U.S.C. § 1989(a) (1976).

Aetna entered the lawsuit at this point by filing a petition in intervention. Plaintiffs then moved for a summary judgment and withdrew all claims against Aetna. At no time did plaintiffs offer any proof as to the actual damages suffered by themselves or by other members of the plaintiff class. It would appear that both the plaintiffs and the trial court relied primarily upon the damage provisions of § 1989 (a), for in sustaining the motion for summary judgment against Long, the trial court entered judgment in an amount "for each member of the Plaintiff Class, three (3) times the actual

damages suffered or Fifteen Hundred Dollars ($1,500.00) damages, whichever is the greater," to be determined "by this Court or by such referee as might be duly appointed for that purpose." No further proceedings have been had toward making that determination.

On the basis of that judgment the plaintiffs filed an affidavit in garnishment and served interrogatories upon Aetna. Aetna responded by denying that it had "property of" or owed any indebtedness "to the judgment debtor" (Long) which would be subject to garnishment under the provisions of Neb. Rev. Stat. § 25-1056 (Reissue 1979). Aetna further replied by supplemental answer that it had issued two motor vehicle dealer's bonds to Long in the face amount of $20,000 each, and prayed for an order discharging it as garnishee. At the request of the plaintiffs, a hearing was had to determine Aetna's liability as garnishee. Following this hearing the court noted the many violations of federal and state law committed by Long which amounted to breaches of the conditions of the bonds. Consequently, the court concluded that "[f]or each of these and other violations by Long of the terms and conditions of the bonds, they [the bonds] remain subject to forfeiture in their entirety without need of any further proof of damages or losses, actual òr otherwise." The court then ordered the aggregate penal sum of the two bonds in the amount of $40,000 paid into court. Aetna then perfected this appeal.

At the outset, we should dispose of the plaintiffs' claim that Aetna did not raise the issue of the applicability of garnishment as a remedy in the court below and therefore is precluded from doing so here. This is not true. As previously indicated, in its answers to interrogatories it denied any indebtedness to or possession of any property of Long and asked that it be discharged in garnishment. This clearly raised that issue and preserved it for this appeal.

This brings us to the principal question of whether an

action in garnishment may be brought against the surety of a motor vehicle dealer's bond. Garnishment in aid of execution of a judgment is proper in Nebraska only when the garnishee has property of and is indebted to the judgment debtor. § 25-1056. The question becomes whether Aetna was indebted to or owned any property right of C. Caroll Long at the time the forfeiture of the bonds was ordered by the District Court.

Plaintiffs cite in support of their position that garnishment was proper *Townley v. Whetstone*, 190 Neb. 541, 209 N.W.2d 350 (1973), and *Morrill v. Gallagher*, 370 Mich. 578, 122 N.W.2d 687 (1963). However, both of those cases involved contracts of liability insurance, which is an altogether different matter. At least as early as 1917, Nebraska recognized the right of garnishment in cases involving liability insurance. In *Elliott v. Aetna Life Ins. Co.*, 100 Neb. 833, 161 N.W. 579 (1917), this court quoted with approval the following language from *Patterson v. Adan*, 119 Minn. 308, 138 N.W. 281 (1912): "'We therefore hold that, in a policy such as this, where the company has come into the litigation and assumed exclusive control thereof under its contract, it recognizes a liability, if it fails to defend successfully, to pay the assured the amount of the judgment it so permits to be established, not exceeding the sum stipulated in the policy, and also that, as to the plaintiff [judgment creditor], it should be considered that such judgment is a debt due the assured from the company, and not dependent on any contingency.'" *Id.* at 838, 161 N.W. at 581.

Plaintiffs also rely upon *Seider v. Roth*, 17 N.Y.2d 111, 216 N.E.2d 312, 269 N.Y.S.2d 99 (1966). There, attachment of a liability insurance policy issued to the defendant Lemiux was utilized to obtain in rem service upon him, a Canadian resident. In allowing such a proceeding, the court said: "The Hartford policy is in customary form. It requires Hartford, among other things, to defend Lemiux in any automobile negligence action and, if judgment be rendered against Lemiux, to

indemnify him therefor. Thus, as soon as the accident occurred there was imposed on Hartford a contractual obligation which should be considered a 'debt' within the meaning of CPLR 5201 and 6202." *Id.* at 113, 216 N.E. 2d at 314, 269 N.Y.S. 2d at 101. This, it would seem, is simply an application of the general rule that a policy of liability insurance is garnishable although one of indemnity is not. 7A Am. Jur. 2d *Automobile Insurance* § 448 (1980).

The only other cases cited by plaintiffs in support of their position on this issue are *Savchuk v. Rush*, 311 Minn. 480, 272 N.W.2d 888 (1978), and *Fico, Inc. v. Ghingher*, 287 Md. 150, 411 A.2d 430 (1980). *Savchuk* involved garnishment of a liability insurance carrier and a statute which authorized garnishment where the garnishee and the debtor are parties to a contract of suretyship, guarantee, or insurance. *Fico* involved garnishment of a fund created under the Maryland Bulk Transfer Act and held in escrow for the benefit of creditors. However, it is interesting to note that the Maryland court repeated the language which has been applied universally in garnishment cases: "An attaching judgment creditor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover." *Id.* at 159, 411 A.2d at 436.

We have held that a creditor plaintiff seeking recovery from a garnishee has no greater rights than those of the debtor himself. If the latter has a right of action in garnishment against the garnishee, so does the creditor, but not otherwise. *Fitzgerald v. Hollingsworth*, 14 Neb. 188, 15 N.W. 345 (1883). "[T]his plaintiff by garnishment could obtain no better right than her debtor had." *Farrington v. Fleming Commission Co.*, 94 Neb. 108, 112, 142 N.W. 297, 299 (1913).

In *Nite Owl Corp. v. Mgement Serv., Inc.*, 84 S.D. 521, 527, 173 N.W.2d 451, 454 (1970), that court stated: "This court has said that a proceeding in garnishment is in effect an action by a defendant debtor in the plaintiff-

creditor's name against the garnishee. . . . The test in determining liability of the garnishee defendant to the garnisheeing plaintiff is whether or not the facts would support a recovery by the principal defendant against the garnishee defendant."

The following cases are reflective of this debtor-creditor theory of garnishment. *Moe v. Conn*, 129 Wash. 380, 225 P. 69 (1924), involved a statutorily required bond to all damages which might be sustained by persons injured while riding in a jitney. In rejecting the propriety of a garnishment proceeding on such a bond, the court said, "[W]e are of the opinion that the bond in this case did not create such an indebtedness." *Id.* at 384, 225 P. at 71. *Seaboard Surety Co. v. Acme Wellpoint Corp.*, 156 So. 2d 688 (Fla. 1963), also denied the remedy of garnishment. That court said, "Under no consideration was Seaboard, the surety on Smith's bond, indebted to Smith, the principal, for an obligation which Smith itself was obligated to pay. The breach of a bond by a principal could create no liability against the surety by which the principal may profit." *Id.* at 689. Finally, *G'Year T. & R. Co. v. New Ams'Dam Cas. Co.*, 101 Ga. App. 577, 114 S.E.2d 546 (1960), involved a contractor's bond to materialmen and laborers. There it was stated: "If there is no debt owing by the garnishee to the principal debtor, there is no basis for a garnishment." *Id.* at 578, 114 S.E.2d at 547.

*G'Year T. & R. Co.* also ably distinguishes garnishment proceedings against a liability insurance carrier and a surety on a bond. In doing so, it found that the obligation of a surety bond "rendered the surety liable to the persons therein named in the event of the failure of the contractor to make the payments to such persons, but it did not create any liability, contingent or otherwise, as between the principal and the surety." *Id.* at 578, 114 S.E.2d at 547. In light of this finding, the court concluded: "The instrument which forms the basis for the proceeding of garnishment in this case is a joint and several obligation of the contractor and the surety. The

contractor, being an obligor thereon, acquired no rights thereunder. [Citations omitted.] This case is distinguishable from those cases involving liability insurance where the contract is between the insurer and the insured and where the obligation of the insurer is to pay upon the contingency named therein without regard to the ability of the insured to pay. In such cases, a right of action in favor of the insured arises against the insurance company." *Id.* at 578, 114 S.E.2d at 547.

A similar situation exists in the present action. The bonds issued by Aetna are conditioned upon the faithful performance by Long of all the terms and conditions of his license and the acts of the Legislature relating thereto. They further provide that the dealer will fully indemnify persons suffering a loss due to the dealer's false and fraudulent practices. Such language creates no liability of the surety to the principal and creates no right of action in the principal against the surety. By contrast, an insurance policy creates an obligation in the insurer toward the insured. As a general rule, a surety bond which runs in favor of the state or a third person creates no such liability to the principal and is not subject to garnishment by the principal's creditors. The District Court should have granted Aetna's request for discharge in garnishment.

There is an equally compelling reason why the judgment of the District Court must be reversed. This involves Aetna's second assignment of error which questions the availability of the bond proceeds to pay statutory penal damages.

This court has made it clear that the proceeds of motor vehicle dealer's bonds shall be made available to the customers of fraudulent auto dealers. In interpreting the predecessor of § 60-1419, we stated: "It is obvious that the Legislature intended that any person sustaining loss by reason of a motor vehicle dealer's conduct in engaging in acts prohibited by law would be entitled to recourse on such a bond . . . ." *Sun Ins. Co. v. Aetna Ins. Co.*, 169 Neb. 94, 110, 98 N.W.2d 692, 701

(1959). However, one may not be able to equate the word "loss" as used in *Sun Ins. Co.* with the recovery awarded the plaintiff class in the principal action in this case.

The award of damages entered by the District Court against Long provided "for each member of the Plaintiff Class, three (3) times the actual damages suffered or Fifteen Hundred Dollars ($1,500.00) damages, whichever is the greater." The similarity between the language of this award and the provision of § 1989(a) governing damages for violation of the federal Motor Vehicle Information and Cost Savings Act makes it obvious to this court that said award was based upon the federal damage provision and not upon actual damages suffered by the plaintiff class. This reliance on the federal act in awarding damages to the plaintiff class is an important factor in determining whether such an award is within the coverage of the bonds in question.

As stated above, the bonds are to insure that the auto dealer faithfully performs and complies with all the terms and conditions of his dealer's license as well as with the acts of the Legislature relating thereto. They are also meant to insure that the dealer will indemnify "any person or other dealer by reason of any loss suffered" due to "any false and fraudulent representations or deceitful practices whatever in representing any motor vehicle or trailer . . . ." The issue facing the court at this time is whether the damages awarded by the District Court amount to a "loss suffered" as that phrase is used in the bonds.

Numerous courts have determined that an award of damages pursuant to § 1989(a) is not meant to compensate for actual damages suffered but, rather, is designed to punish or deter fraudulent auto dealers and to reward customers of those dealers who have successfully brought suit for the fraudulent actions. *Klein v. Pincus*, 397 F. Supp. 847 (E.D.N.Y. 1975); *Kantorczyk v. New Stanton Auto Auction, Inc.*, 433 F. Supp. 889 (W.D. Pa. 1977); *Parker v. DeKalb Chrysler Plymouth*,

459 F. Supp. 184 (N.D. Ga. 1978); *Cantrell v. Thaler Ford Sales, Inc.,* 485 F. Supp. 528 (S.D. Ohio 1980); *Byrne v. Autohaus on Edens, Inc.,* 488 F. Supp. 276 (N.D. Ill. 1980); *Tye v. Spitzer-Dodge,* 499 F. Supp. 687 (S.D. Ohio 1980); *Shipe v. Mason,* 500 F. Supp. 243 (E.D. Tenn. 1978); *Christianson v. Lease Associates, Inc.,* 87 Wis. 2d 123, 273 N.W.2d 776 (1978).

*Fischer v. Long and Aetna Casualty & Surety Co.,* CV79-L-108 (D. Neb. 1979), is indicative of this line of cases. That case involved the same bonds, principal, and surety as are involved in the present action. The Fischers were granted a default judgment against Long for $1,500 in accordance with § 1989(a) and then sought to obtain payment of that amount out of the funds secured by the bonds. In granting Aetna's motion to dismiss, the court noted that the purpose of § 1989(a) was to "punish odometer tamperers by imposing civil penalties upon them and to reward purchasers who discover such tampering and bring it to the attention of the federal courts. [Citations omitted.] Moreover, as common law remedies for victims of odometer tampering were available prior to the enactment of § 1989, it would appear that the purpose of the statute would not be compensation, but punishment." By drawing this conclusion, the court was able to find: "To state a cause of action against Aetna under the surety contract, the plaintiffs must allege that they have suffered a loss. This they have not done; they have only prayed for judgment in the amount of $1,500 pursuant to § 1989(a). This is insufficient, because the surety agreement does not cover indemnification for statutory penalty/reward."

While such federal decisions are not binding on this court with regard to the interpretation of the words "any loss suffered," as used in the bonds and § 60-1419, we are inclined to follow the ruling of the federal district court insofar as an intepretation of 15 U.S.C. § 1989(a) is concerned. This court has stated: "[W]e are obligated to examine any existing federal court cases because, in the administration and interpretation of

federal legislative acts, pertinent opinions of the federal courts are binding upon the state courts. [Citation omitted.]" *Anderson v. Wagner*, 207 Neb. 87, 91, 296 N.W.2d 455, 458 (1980).

In light of this rule, the court is obligated to follow the numerous cases interpreting § 1989(a) and conclude that an award under that provision is a penalty and a reward for bringing the action successfully, and is not limited or designed to compensate one for a "loss suffered." Therefore, the plaintiff class may only recover on the bonds in question by alleging and proving actual damages arising out of Long's fraudulent activities. This they have not done, as is evident by the fact that no action has been taken by the District Court or a referee appointed by that court to determine damages in accordance with the District Court's order of November 16, 1979. The plaintiff class may proceed against Aetna by direct action to recover only those actual damages which they have suffered to the extent that they have proven the same.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS THE GARNISHMENT PROCEEDINGS AND DISCHARGE THE GARNISHEE.